UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
ANTHONY J. SEGRETO and LINDA M.
SEGRETO,

                    Plaintiffs,

         -against-                          MEMORANDUM & ORDER
                                            12-CV-1961(JS)(WDW)
THE TOWN OF ISLIP, THE COUNTY OF
SUFFOLK, NEW YORK STATE DEPARTMENT
OF ENVIRONMENTAL CONSERVATION,
PETER A. SCULLY as director of
NYSDEC Region 1, PETER A. SCULLY,
individually, VERNON RAIL, as
attorney for NYSDEC Region 1, and
VERNON RAIL, individually,

                    Defendants.
-------------------------------------X
APPEARANCES
For Plaintiffs:          Anthony J. Segreto, pro se
                         135 Bluepoint Road
                         Oakdale, NY 11769

                         Linda M. Segreto, pro se
                         512 Third Street
                         Troy, NY 12182

For Defendant Town:      John Ryan DiCioccio, Esq.
                         Islip Town Attorney's Office
                         655 Main Street
                         Islip, NY 11751

For Defendant County:    Leonard G. Kapsalis, Esq.
                         Suffolk County Department of Law
                         100 Veterans Highway
                         P.O. Box 6100
                         Hauppauge, NY 11788

For Defendants DEC,
Scully, and Rail:        Issac C. Cheng, Esq.
                         N.Y.S. Attorney General's Office
                         120 Broadway, 26th Floor
                         New York, NY 10271

SEYBERT, District Judge:

Pro se Plaintiffs Anthony J. Segreto and Linda M. Segreto (collectively "Plaintiffs") bring this action against the Town of Islip (the "Town"), the County of Suffolk (the "County"), New York State Department of Environmental Conservation ("DEC"), Peter A. Scully in his individual and official capacity as DEC Region 1 Director ("Scully" or "Director"), and Vernon Rail ("Rail" and together with the DEC and Scully the "State Defendants") in his individual and official capacity as counsel for DEC Region 1 seeking relief under 42 U.S.C. §§ 1983 and 1985 and the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), as codified by 18 U.S.C. § 1961 et seq. The Town, the County, and the State Defendants (collectively "Defendants") have each moved to dismiss the Complaint for lack of jurisdiction and failure to state a claim. For the reasons that follow, Defendants' motions are GRANTED.

## BACKGROUND[1]

On February 14, 2006, Plaintiffs purchased a home and approximately 3.2 acres[2] of surrounding water-front property at

---

[1] The following facts are taken from Plaintiffs' Complaint and the documents referenced therein and are presumed to be true for the purposes of this Memorandum and Order.

135 Bluepoint Road in Oakdale, New York (the "Property"). (Compl. ¶ 9.) Plaintiffs allege that for about the last seven years, the Town has been flooding the Property with contaminated cesspool water and toxic liquids causing pollution and erosion. (Compl. ¶¶ 11-13.) Slow but steady erosion eventually culminated in a "washout" during a heavy rainfall in October 2005. (Id. ¶ 31.) Now, saltwater tides also have accelerated the erosion. (Id.)

Furthermore, Plaintiffs claim that the Town "created" a parcel of land ("Parcel #37" or "Deer Lake") and then improperly exercised ownership over it. Plaintiffs allege that under the "Patent Law of August 26, 1930 - Liber 1524" a non-buildable lot contained within surrounding buildable lots properly belongs to the owners of the buildable lots. (Id. ¶ 24.) A map from 1909 shows that Deer Lake was a 1/3-acre non-buildable lot surrounded by eight buildable lots of the Property. (Id. ¶ 32.) In 1977, the Town named Deer Lake "Parcel #37," determined that the parcel was un-owned, and transferred ownership to the County in contravention of the Patent Law. (Id. ¶ 50.)

Moreover, the County has also contributed to flooding through its creation of a toxic recharge basin which empties

_____

[2] It is unclear from the face of the Complaint how much land Plaintiffs currently own versus how much has been subject to erosion.

onto the Property. (Id. ¶ 14.) The recharge basin consists of a five-pond ecosystem created by the County which, rather than filtering out toxins, essentially spreads water and directs toxic recharge water directly onto Plaintiff's land. (Id. ¶ 25.) The Town and the County refuse to sample the soil, and Plaintiffs believe that the toxins may be carcinogenic. (Id. ¶¶ 27-28.)

Plaintiffs further allege that due to the continual state of flooding, the DEC has determined that portions of the Property are "wetlands" under the New York Tidal Wetlands Act. This, they claim, is erroneous, as the land is not "wetlands," but instead the Town and the County have artificially created a state of perpetually wet land on the Property. (Compl. ¶ 17.)

As a result of the DEC's determination that the Property is "wetlands," it will not permit Plaintiffs to repair . . . bulkheads and Defendant Scully has "held up the Plaintiffs' bulkhead permit for 7 years." (Id. ¶ 39.) The bulkheads were permitted to fall into disrepair by the elderly former owners of the Property. (Id. ¶ 16.) Rather than understanding that the former owners were unable to remedy the situation and maintain the bulkheads, the DEC has discriminated against the former owners and continued this pattern of wrongdoing against Plaintiffs. (Id. ¶ 52.)

In addition, Plaintiffs must now apply for permits to take particular actions on the Property, and the DEC has issued various violations against Plaintiffs for "putting a shovel in the soil" and filling in land where trees uprooted. (Id. ¶ 51.) In fact, as more fully described below, the DEC brought suit against Plaintiffs in an administrative action for violating the New York State Tidal Wetlands Act. (Id.; Cheng Decl. Ex. A.) In the process of prosecuting these claims, the State Defendants have denied Plaintiffs' hearings (Compl. ¶ 57), Scully has made every effort to deny Plaintiffs their day in court (id. ¶ 59), and Rail has repeatedly moved to forego a hearing (id. ¶ 60). Plaintiffs also allege that the DEC has conducted several illegal searches of the Property and on one occasion the "NYSDEC CEO" entered the Property, conducted a search, and issued a citation for putting wood chips down. (Id. ¶ 55.) In conducting these actions, the State Defendants have acted in an arbitrary and capricious manner, singling out Plaintiffs' Property while allowing similarly situated neighbors permits. (Id. ¶ 64.)

Finally, Plaintiffs allege that Defendants have conspired to violate their constitutional rights (id. ¶ 34) and that the State Defendants' actions demonstrate a RICO operation requiring this Court to order an investigation (id. ¶¶ 47, 61-63).

PROCEDURAL PROCESS

There have been several actions and proceedings in various courts pertaining to the Property and the parties which bear particular relevance to Plaintiffs' claims in the case at bar. First, the DEC commenced an administrative action against Plaintiffs in 2007 charging Plaintiffs with violating the New York State Tidal Wetlands Act by clearing vegetation and causing "the placement of fill." (Cheng. Decl. Ex. A.) The DEC sought an order without a hearing, pursuant to 6 N.Y.C.R.R. 622.12, which the Commissioner of the DEC granted on February 1, 2008. (Id.)

Plaintiffs then commenced an action in the Supreme Court of the State of New York, County of Suffolk pursuant to N.Y.C.P.L.R. Article 78 against the Town, the County, Scully and Rail on February 15, 2008. (DiCioccio Decl. Ex. B.) In that action, Plaintiffs sought to obtain "relief from flooding of their property which they contend has been caused by actions of the Respondents" and to challenge the DEC's decisions to enforce the wetlands regulations. (Id.) The Supreme Court dismissed the action, finding that Article 78 was not the proper proceeding for the relief sought and that "the Petitioners have failed to identify any basis to disturb" the DEC's determination. (Id. Ex. C.)

On February 4, 2009, Plaintiffs commenced a similar action, again in the New York State Supreme Court, Suffolk County, this time against the Town and the County only. (Id. Ex. D.) Plaintiffs re-alleged their claims regarding flooding of the property, including flooding from saltwater, and claimed that the County was artificially diverting water onto the Property through a faulty sewer drainage system. (Id.) Plaintiffs also alleged that the Town and the County had committed theft by claiming ownership of Deer Lake. (Id.)

The Town and the County separately moved for summary judgment. The Supreme Court granted summary judgment in favor of the County on March 14, 2011, finding that Mr. Segreto's deposition testimony in that case and the County's submissions established that Plaintiffs did not have any cognizable claims against the County. (Id. Ex. E.) In that same Order, the Supreme Court also denied Plaintiffs' motion for declaratory judgment in which it declared that the Plaintiffs own Deer Lake because their deed at the time of purchase did not include said parcel. (Id.)

On November 11, 2011, the Supreme Court granted summary judgment in favor of the Town, holding that the Town was immune from claims regarding negligent design of the sewer system, that claims regarding flooding from saltwater were time-barred, and that Plaintiffs' claims with respect to Deer Lake

were without merit because Plaintiffs did not have an ownership interest in it.[3]  (Id. Ex. F.)

DISCUSSION

Liberally construing the Complaint, Plaintiffs have alleged: (1) injury by the state court; (2) the Town and the County violated the Takings Clause by wrongfully flooding the property and transferring ownership of Deer Lake; (3) the State Defendants violated the Takings Clause by wrongfully flooding the property, denying Plaintiffs of procedural due process, and acting arbitrarily and capriciously in regulating Plaintiffs' Property; (4) the State Defendants have conducted illegal searches on the Property; (5) the State Defendants have engaged in age discrimination; (6) the State Defendants have potentially violated RICO and thus the Court should order an investigation; and (7) the Defendants have conspired to violate Plaintiffs' constitutional rights.

Defendants have each moved to dismiss the Complaint, arguing that this Court lacks jurisdiction; that Plaintiffs' claims are barred by the Eleventh Amendment and the doctrines of res judicata and collateral estoppel; and that Plaintiffs have otherwise failed to state a claim.  The Court will first address

---

[3] Plaintiffs' subsequent submissions to this Court and exhibits in support of the DEC's motion to dismiss indicate that Plaintiffs have sought to appeal the Supreme Court's decisions. (See, e.g., Docket Entry 30; see generally Cheng Decl.)

the standards of review before turning to the jurisdictional and substantive claims.[4]

I. Standards of Review

    A.  Standard of Review under Rule 12(b)(1)

      "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions. See Morrison v. Nat'l Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008). The Court must accept as true the factual allegations contained in the Complaint, but it will not draw argumentative inferences in favor of Plaintiff because subject matter jurisdiction must be shown affirmatively. See id.; Atlanta Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1998); Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).

      A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it

---

[4] The State Defendants have filed only a partial motion to dismiss. The State Defendants have not addressed Plaintiffs' equal protection claims or their claims regarding a violation of the Takings Clause through wrongful flooding.

exists. <u>Makarova</u>, 201 F.3d at 113. <u>Pro se</u> plaintiffs, although entitled to a more liberal pleading standard, must still comport with the procedural and substantive rules of law. <u>See</u> <u>Jedrejcic v. Croatian Olympic Comm.</u>, 190 F.R.D. 60, 69 (E.D.N.Y. 1999).

 B. <u>Standard of Review under Rule 12(b)(6)</u>

  In deciding Rule 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); <u>accord</u> <u>Harris v. Mills</u>, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678; <u>accord</u> <u>Harris</u>, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. <u>Iqbal</u>, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u>; <u>accord</u> <u>Harris</u>, 572 F.3d at 72.

  Furthermore, in deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint." <u>Pani v. Empire Blue Cross Blue Shield</u>, 152 F.3d 67, 71 (2d Cir. 1998). This has been

interpreted broadly to include any document attached to the Complaint, any statements or documents incorporated in the Complaint by reference, any document on which the Complaint heavily relies, and anything of which judicial notice may be taken.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (citations omitted); Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991).

## II. Jurisdiction and Standing

Before the Court may address the substantive issues of this case, it is necessary, first, to determine whether Plaintiffs have standing to bring their claims and whether the Court has subject matter jurisdiction to hear them.[5]

### A. Rooker-Feldman

The Town and County Defendants argue that this Court does not have subject matter jurisdiction over many, if not all, of Plaintiffs' claims against them because Plaintiffs have previously litigated their case in state court and Plaintiffs' federal claims essentially seek to appeal the state court judgment.  (Docket Entries 16-9 at 14-15, 17-8 at 9-10.)  Thus, they say, the Rooker-Feldman doctrine bars this action.

_____

[5] Defendant County asserts that this Court lacks subject matter jurisdiction because Plaintiffs have not adequately alleged any facts constituting deprivation of a federal right pursuant to 42 U.S.C. § 1983.  However, such an argument is more appropriately categorized as failure to state a claim than a lack of subject matter jurisdiction.  See HBP Assocs. v. Marsh, 893 F. Supp. 271, 275 (S.D.N.Y. 1995).

Plaintiffs counter that this case is about Defendants' violations of Plaintiffs' constitutional rights, which have not previously been addressed by any court. (Docket Entry 24 at 4.)

The Rooker-Feldman doctrine "establishes the principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." MacPherson v. Town of Southampton, 738 F. Supp. 2d 353, 362 (E.D.N.Y. 2010). Courts in this Circuit typically apply four factors to determine whether Rooker-Feldman bars a federal suit, namely that: (1) plaintiff is a state court loser; (2) plaintiff complains of injuries caused by the state court judgment; (3) plaintiff seeks review of the state court judgment; and (4) the state court judgment was rendered before district court proceedings began. Id.

Here, there is no question that the first and fourth elements have been satisfied. The Complaint is replete with statements that Plaintiffs previously brought Article 78 and state court actions, that Plaintiffs lost in those actions, and that the state court rendered judgments which are now on appeal. (Compl. ¶¶ 68, 71.) Further, and although the judgments were final, even an interlocutory decision would be subject to Rooker-Feldman. MacPherson, 738 F. Supp. 2d at 363. Thus, the fact that Plaintiffs are currently in the process of appealing

their state court losses does not prevent application of the Rooker-Feldman doctrine.

The more nuanced inquiry in this case pertains to the element of complaining of injuries caused by the state court judgment. Near the very beginning of the Complaint, Plaintiffs allege that "the New York State Court System . . . denied the Plaintiffs' their basic U.S. Constitutional Rights." (Compl. ¶ 5.) Later, they claim that a state court employee discarded important and relevant information necessary for it to make a proper determination regarding their claims of trespass. (Id. ¶¶ 69-71.) These allegations raise direct issues with the state court judgment, and fairly explicitly ask that this Court remedy these injuries. This is the very type of claim that the Rooker-Feldman doctrine bars. MacPherson, 738 F. Supp. 2d at 363-64 (court lacked jurisdiction to hear claims that state court improperly issued temporary restraining orders and thereby violated plaintiffs' due process rights). Thus, to the extent that the Complaint raises any allegations that this Court address injuries caused by the state court judgments, these claims are DISMISSED WITH PREJUDICE for lack of subject matter jurisdiction.

However, Plaintiffs also raise a wide range of other claims against Defendants. Certainly, Plaintiffs' claims and factual assertions have some apparent overlap with those they

13

brought before the state court. For instance, in both proceedings, Plaintiffs brought claims against the Town and the County relating to flooding of their property. Unlike the state court action, however, in the action before this Court Plaintiffs have alleged constitutional violations under 42 U.S.C. § 1983 ("Section 1983"). The case law is clear that "recasting [a] complaint in the form of a civil rights action pursuant to 42 U.S.C. § 1983" does not avoid the Rooker-Feldman bar. Fariello v. Campbell, 860 F. Supp. 54, 65 (E.D.N.Y. 1994). Whether the doctrine bars the subsequent Section 1983 federal action depends upon whether the Section 1983 claims are "inextricably intertwined" with the state court judgment. Id.

While some courts have defined particular standards to determine the meaning of "inextricably intertwined," id., others have found that the phrase has no independent meaning, Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 86-87 (2d Cir. 2005). What has become clear is that the Rooker-Feldman doctrine is independent from doctrines such as collateral estoppel and res judicata. Hoblock, 422 F.3d at 92; see also McKithen v. Brown, 481 F.3d 89, 97-98 (2d Cir. 2007) ("[T]he applicability of the Rooker-Feldman doctrine turns not on the similarity between the party's state-court and federal-court claims . . . but rather on the causal relationship between the state-court judgment and the injury of which the party complains

in federal court.") (emphasis in original). In Exxon Mobil Corp. v. Saudi Basic Indus. Corp., the United States Supreme Court narrowed the previously broad applicability of the Rooker-Feldman doctrine and explained that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005).

Thus, where, as here, Plaintiffs re-raise a number of the claims previously raised in state court, but are not complaining of injuries caused by the state court judgment, collateral estoppel and res judicata may present a bar, but the Rooker-Feldman doctrine does not. See Glatzer v. Barone, 614 F. Supp. 2d 450, 465 (S.D.N.Y. 2009); see also McKithen, 481 F.3d at 98 ("[A] party is not complaining of an injury 'caused by' a state-court judgment when the exact injury of which the party complains in federal court existed prior in time to the state-court proceedings, and so could not have been 'caused by' those proceedings.") (emphasis in original). Accordingly, the Court will address these issues infra.

B.  Eleventh Amendment

The State Defendants assert that this Court lacks subject matter jurisdiction over several of Plaintiffs' claims against them pursuant to the Eleventh Amendment of the United States Constitution.  Under the Eleventh Amendment, "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  Thus, "[p]rivate citizens may not maintain an action in federal court against a State itself, or against a state agency, unless the State has waived its sovereign immunity."  Baker v. Dep't of Envtl. Conservation of State of N.Y., 634 F. Supp. 1460, 1462 (N.D.N.Y. 1986).

The State Defendants argue that Plaintiffs' claims under 42 U.S.C. §§ 1983 and 1985 against the DEC and for damages against Defendants Scully and Rail in their official capacities are barred by the Eleventh Amendment.  To begin, the DEC is an arm of the state, and thus, the Eleventh Amendment applies to the DEC with the same force as though Plaintiffs had asserted the claims directly against New York State.  See Salvador v. Lake George Park Comm'n, No. 98-CV-1987, 2001 WL 1574929, at *2 (N.D.N.Y. Mar. 28, 2001); Baker, 634 F. Supp. at 1462-63. Likewise, the Eleventh Amendment bars suits for monetary damages

against a state official acting in his or her official capacity. Salvador, 2001 WL 1574929, at *2. As such, the Eleventh Amendment may also present a bar to some of Plaintiffs' claims against Scully and Rail.

Further, the State has not waived its sovereign immunity for claims pursuant to 42 U.S.C. §§ 1983 and 1985. See id. at *2 ("The United States Supreme Court has expressly held that Congress did not intend 42 U.S.C. § 1983 to abrogate the sovereign immunity of states."); Baker, 634 F. Supp. at 1463 (same); see also Baird v. N.Y.S. Exec. Dep't, No. 95-CV-0686, 1998 WL 690951, at *2 (N.D.N.Y. Sept. 28, 1998) (Eleventh Amendment presents a bar to a claim under § 1985); Estes-El v. Town of Indian Lake, 954 F. Supp. 527, 536 (N.D.N.Y. 1997) (same regarding § 1983). Therefore, Plaintiffs' Section 1983 and 1985 claims for monetary damages against the DEC and against Scully and Rail in their official capacities are DISMISSED WITH PREJUDICE for lack of subject matter jurisdiction.

C. Standing to Assert Age Discrimination Claim

The State Defendants also assert that Plaintiffs do not have standing to assert their age discrimination claims. The Court agrees.

Plaintiffs have essentially sought to allege an age discrimination suit on behalf of the former owners. For example, the Complaint states:

> The former owners were in their 80's and
> 90's with Alzheimer's.  That does not give
> the NYSDEC permission to take control and
> create natural wetlands and enforce natural
> wetland's laws, because people are too old
> to fix bulkheading that was damaged.  That
> is discrimination against the elderly; their
> property becomes worthless because they
> cannot fix the problem and the new owners
> can fix the problem, so that the state gets
> ownership without paying for the property.
> Classic Age Discrimination by the state.

(Compl. ¶ 52.)

However, to properly assert Article III standing to bring a federal suit, the Plaintiffs must allege an injury personal to them for each claim asserted. Mahon v. Ticor Title Ins. Co., 683 F.3d 59, 62 (2d Cir. 2012).  Here, Plaintiffs attempt to bring a claim for injury to the former owners. Accordingly, they do not have standing, and Plaintiffs' age discrimination claim against the State Defendants is DISMISSED WITH PREJUDICE.

D.  Standing to Assert RICO Claim

The State Defendants also argue that the Court should dismiss Plaintiffs' RICO claim because the Court cannot grant the relief requested.  Plaintiffs request a "court investigation of the NYSDEC Region 1 as operating as a RICO" (Compl. ¶ 1) and that the Court initiate a federal RICO investigation of NYSDEC Region 1. (Id. ¶¶ 46-47.)

Although Defendants have not presented the issue as such, this is a matter of standing. See Linda R.S. v. Richard D., 410 U.S. 614, 619, 93 S. Ct. 1146, 35 L. Ed. 2d 536 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); see also Esposito v. New York, 355 F. App'x 511, 512-3 (2d Cir. 2009). Accordingly, Plaintiffs lack standing to ask this Court to order the investigation or prosecution of a RICO criminal action against Defendants. See, e.g., Tia v. Criminal Investigating Demand as Set Forth, No. 10-00383, 2010 WL 3064472, at * 3 (D. Haw. Aug. 5, 2010) (holding that the plaintiff lacked "standing to ask the court to order the investigation or prosecution of any individual under the criminal provisions of the RICO Act"). Therefore, Plaintiffs' claim seeking the appointment of a special prosecutor to investigate the RICO criminal action of all Defendants is DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.

E.   Subject Matter Jurisdiction over Plaintiff's Takings
     Claims

The Town and the State Defendants also argue that this Court lacks subject matter jurisdiction over Plaintiffs' claims that Defendants violated the Takings Clause of the Fifth Amendment because Plaintiffs' claims are not ripe for review. The Takings Clause provides that private property shall not "be

taken for public use, without just compensation." The Court
agrees that Plaintiffs' claims of regulatory taking are not
ripe.

Reading the Complaint liberally, Plaintiffs allege a
number of ways in which Defendants have violated the Takings
Clause. Briefly, they allege that the Town, the County, and the
State Defendants illegally flooded their property; the Town
wrongfully claimed ownership over Deer Lake; and the State
Defendants' regulations and enforcement of the New York Tidal
Wetlands Act has prevented them from taking particular action on
their property or using their property as they wish.

Regulatory takings claims, such as those Plaintiffs
raise against the State Defendants in the instant case, are not
ripe until two elements have been satisfied: (1) the state
regulatory "entity charged with implementing the regulations has
reached a final decision regarding the application of the
regulations to the property at issue," Williamson Cnty. Reg'l
Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172,
186, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985), and (2)
Plaintiffs have sought just compensation by means of
"reasonable, certain and adequate" state procedures, id. at 194
(internal quotation marks and citation omitted). "In the area
of land use, the doctrine of ripeness is intended to avoid
premature adjudication of administrative action." Sunrise Dev.,

Inc. v. Town of Huntington, 62 F. Supp. 2d 762, 770 (E.D.N.Y. 1999) (internal quotations omitted).

The parties do not dispute the finality element. Rather, the primary inquiry in this case is whether Plaintiffs have sought just compensation through state procedures. "[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." Williamson Cnty. Reg'l Planning Comm'n, 473 U.S. at 195. Further, "[i]t is well-settled that New York State has a 'reasonable, certain and adequate provision for obtaining compensation.'" Country View Estates @ Ridge LLC v. Town of Brookhaven, 452 F. Supp. 2d 142, 156 (E.D.N.Y. 2006) (quoting R-Goshen LLC v. Village of Goshen, 289 F. Supp. 2d 441, 449 (S.D.N.Y. 2003)).

Here, the Complaint makes clear that Plaintiffs have not previously sought just compensation before any court. (Compl. ¶ 66.) Accordingly, Plaintiffs' regulatory takings claims, i.e., their claims that the State Defendants have gone "too far" in regulating their property under the New York Tidal Wetlands Act, are not ripe and this Court does not have proper jurisdiction over these claims. See Clark v. Town of East Hampton, 757 F. Supp. 2d 121, 123 (E.D.N.Y. 2010) (federal court lacks jurisdiction over unripe takings claims). Therefore

Plaintiffs' regulatory taking claims against the State Defendants are DISMISSED WITHOUT PREJUDICE.

To be clear, a ripeness inquiry applies only to regulatory takings claims. Plaintiffs' claims that the DEC has violated a substantive due process claim based on "arbitrary and capricious government conduct" require only finality to be ripe; they do not require that Plaintiffs initially seek a state remedy for compensation. See Rivervale Realty Co., Inc. v. Town of Orangetown, N.Y., 816 F. Supp. 937, 943 (S.D.N.Y. 1993). The Complaint here alleges that the DEC acted arbitrarily and capriciously in selectively prosecuting Plaintiffs. (Compl. ¶ 64.) The DEC has not raised any argument with respect to this claim. Although the Court questions, based on finality, whether its exercise of subject matter jurisdiction in this case may be appropriate, the parties have not yet sufficiently addressed the claim. Accordingly, to the extent that Plaintiffs seek to assert a substantive due process claim against the State Defendants for injunctive relief, or against Scully and Rail in their individual capacities, Plaintiffs are directed to show cause why their claims of a substantive due process violation against the State Defendants are ripe such that this Court has subject matter jurisdiction. Plaintiffs shall file a response on or before March 15, 2013.

III. Preclusion

With respect to those takings claims that are properly before the Court, Defendants have further alleged that Plaintiffs are precluded from bringing such arguments in federal court under the doctrines of both collateral estoppel and res judicata.[6]

A. Collateral Estoppel

"The doctrine of collateral estoppel or issue preclusion applies when a litigant in a prior proceeding asserts an issue of fact or law in a subsequent proceeding, and the issue has been necessarily decided in the prior action, is decisive of the present action, and the litigant had a full and fair opportunity in the prior action to contest the decision." 33 Seminary LLC v. City of Binghamton, 869 F. Supp. 2d 282, 298 (N.D.N.Y. 2012).

_____

[6] Although it may seem counter-intuitive to apply preclusion doctrines to instances in which the plaintiffs may have been required to initially bring the action in state court, the United States Supreme Court has made clear that plaintiffs may be precluded from bringing a takings claim in federal court despite the ripeness requirements of Williamson County. See San Remo Hotel, L.P. v. City and Cnty. of San Francisco, Cal., 545 U.S. 323, 338, 125 S. Ct. 2491, 162 L. Ed. 2d 315 (2005) ("Federal courts . . . are not free to disregard 28 U.S.C. § 1738 [the Full Faith and Credit Clause] simply to guarantee that all takings plaintiffs can have their day in federal court."). In any event, the Court here has found that Plaintiffs' regulatory takings claims are not ripe, and thus will analyze only whether the remaining takings claims are precluded.

Defendant Town asserts that Plaintiffs' claim of an unconstitutional taking was necessarily decided in the state court action, and that Plaintiffs had a full and fair opportunity previously to litigate the issue. Plaintiffs premise their takings claim against the Town on their allegations regarding Deer Lake. According to Plaintiffs, in 1977 the Town "wrongfully and illegally" designated Deer Lake as "Parcel #37," determined that Parcel #37's owner was unknown, and then transferred ownership of the parcel to the County. (Compl. ¶ 50.)

In the previous state court action, Plaintiffs brought suit against the Town, seeking monetary damages for the "theft" of Plaintiffs' property. As in the case at bar, Plaintiffs alleged that the Town wrongfully "parcelized" Deer Lake, even though the rightful owners were the owners of the surrounding land. (DiCioccio Decl. Ex. D, ¶¶ 17-19.) According to the Town, the state court necessarily decided, in granting the County summary judgment, that the Town had not robbed Plaintiffs of Deer Lake because Plaintiffs' deed had clearly reflected that the property did not include Deer Lake at the time of purchase. In ruling on the County's motion for summary judgment, the Court also denied Plaintiffs' motion for a declaratory judgment regarding ownership of Deer Lake. (DiCioccio Decl. Ex. E.) The state court held that "the record reflects that Deer Lake was

not included in the residential real property purchased by the plaintiffs, a fact actually known to the plaintiffs prior to the February 2005 closing by which they took title to their residential real property." (Id.)

The state court's determination that Plaintiffs do not own Deer Lake collaterally estops their current takings claim based on any wrongdoing with respect to Deer Lake against the Town, the County, and the State Defendants.  By denying Plaintiffs' request for a declaratory judgment, the state court necessarily determined that Plaintiffs do not own Deer Lake.  To decide Plaintiffs' federal claim of an unconstitutional taking of Deer Lake, this Court would first have to determine whether Plaintiffs' have a proprietary interest in Deer Lake.  See Fed. Home Loan Mortg. Corp. v. N.Y.S. Div. of Hous. and Cmty. Renewal, 83 F.3d 45, 47 (2d Cir. 1996) ("[A] taking occurs where governmental action compels an owner to endure a 'permanent physical occupation' of its property.").  Thus, "[t]o decide plaintiffs' claims related to these issues, the Court would need to revisit issues that have already been decided in state court."  Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C., 701 F. Supp. 2d 340, 350 (E.D.N.Y. 2010).

Plaintiffs also had a full and fair opportunity to litigate this issue.  "In collateral proceedings, inquiries into the full and fair ability to litigate focus properly on the

litigant's incentive and ability to present his claims to the judicial tribunal, rather than on the court's conduct of the prior proceeding." Bonilla v. Brancato, No. 99-CV-10657, 2002 WL 31093614, at *6 (S.D.N.Y. Sept. 18, 2002). Plaintiffs not only had incentive in the previous action, but filed a motion for declaratory judgment. The state court found that the evidence did not support a claim of ownership of Deer Lake. (DiCioccio Decl. Ex. E.)

The Town argues that, like Plaintiffs' takings claim, collateral estoppel also bars their claims that the Town has wrongfully flooded Plaintiffs' property amounting to a taking. The state court ultimately granted the Town's motion for summary judgment and dismissed Plaintiffs' claims for negligence due to diversion of surface waters from a negligently designed sewer system. The court held that the Town was immune from such suit and that Plaintiffs "failed to demonstrate that the their [sic] claims of negligent design and/or negligent surface water diversion are meritorious." (Id. Ex. F.) However, the Court went on to say that Plaintiffs' claims of flooding from saltwater were time-barred and that Plaintiffs' claims of nuisance and trespass were not included in the Notice of Claim, requiring dismissal. (Id.)

The County also asserts collateral estoppel, but only generally cites to the state court's order granting it summary

judgment.  The state court had determined that the County did
not "own[ ], control[ ] or maintain [ ] the public improvements
targeted by the plaintiffs as a cause of the injuries and
damages to their property" and therefore Plaintiffs could not
maintain an action in negligence, trespass, or nuisance against
the County.  (Id. Ex. E.)  In other words, the state court found
that the County had no involvement in the sewer system which
Plaintiffs claimed had diverted water onto their property.

        The state court orders make clear that the only issue
it decided in this regard pertained to whether the Town and
County had acted negligently or tortiously in its design of the
sewer system and flooding of Plaintiffs' property from surface
water.  The state court did not address saltwater flooding by
the Town, and found that the County was not involved in the
design of the sewer system.  While these issues apparently have
some overlap with the allegations made in Plaintiffs' federal
complaint, it is not entirely clear whether Plaintiffs base
their federal takings claim on flooding from surface water from
the sewer system alone.  That is to say, while there are
allegations in the Complaint regarding the relevant sewer
system, there are also allegations regarding flooding from
saltwater.  (Compl. ¶ 31.)  Further, the federal Complaint
continually references flooding resultant from an ill-designed
"recharge basin."  (Id. ¶¶ 14, 26, 45.)  Defendants do not make

clear whether the recharge basin is part of, or separate from, the sewer system Plaintiffs claimed were negligently designed in the state court action. In any event, a party seeking preclusion due to collateral estoppel bears the burden of showing identity of issue. See 33 Seminary LLC, 869 F. Supp. 2d at 298; Caldwell, 701 F. Supp. 2d at 350. Neither the Town nor the County has sufficiently established an identity of issue in this regard. In fact, the County simply cites to the state court order without any analysis, failing to overcome its burden.

Moreover, identity of issue also requires sameness of legal standards. See Macfarlane v. Village of Scotia, 86 F. Supp. 2d 60, 65 (N.D.N.Y. 2000) ("Issues are not identical if the legal standards governing their resolution are significantly different."). "To establish a takings claim under 42 U.S.C. § 1983, [plaintiff] must show (1) a property interest; (2) that has been taken under the color of state law; (3) without just compensation." HBP Assoc., 893 F. Supp. at 277. The state court rulings regarding the sewer system, therefore, do not collaterally estop Plaintiffs' federal takings claim.

B.  Res Judicata

The preclusion inquiry does not end with collateral estoppel, however. The Town and County also assert that

Plaintiffs' claims are barred by the doctrine of res judicata. In this respect, the Court agrees.

Res judicata, or claim preclusion, has an even broader preclusive effect than collateral estoppel. Caldwell, 701 F. Supp. 2d at 351. "Under the doctrine of res judicata, . . . 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action' not just those that were actually litigated." Id. (quoting Flaherty v. Lang, 199 F.3d 607, 612 (2d Cir. 1999).

Since the previous action took place in New York State court, New York law applies. McKithen, 481 F.3d at 103-04; Caldwell, 701 F. Supp. 2d at 351. New York uses the "transactional approach" to res judicata, "barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Thus, "[t]he doctrine applies only if '(1) there is a previous adjudication on the merits; (2) the previous action involved [the party against whom res judicata is invoked] or its privy; and (3) the claims involved were or could have been raised in the previous action." Caldwell, 701 F. Supp. 2d at 351.

Here, of course, Plaintiffs brought their state court action against the Town and the County. (Dioccio Decl. Ex. D.) Accordingly, res judicata can only preclude Plaintiffs' federal claims against these parties, not as against the State Defendants.

The requirements of res judicata are otherwise met and Plaintiffs' takings claim for wrongful flooding is precluded. Certainly this case arises from the same factual grouping as the previous case. See Forjone v. Federated Fin. Corp. of Am., 816 F. Supp. 2d 142, 150 (N.D.N.Y. 2011) (finding that state and federal cases had same factual grouping); Deng v. Aramark Educ. Group, Inc., No. 04-CV-0453, 2006 WL 752826, at *5 (E.D.N.Y. Mar. 23, 2006) (element satisfied where factual allegations in both complaints were the same). As the collateral estoppel analysis demonstrates Plaintiffs have brought essentially the same action as in state court, though this time claiming constitutional violations. Further, the state court's decision granting the Town and the County summary judgment were final adjudications on the merits. Rodriguez by Rodriguez v. Abbott Labs., 151 F.R.D. 529, 532 (S.D.N.Y. 1993) (finding that grant of summary judgment was a final decision on the merits); Deng, 2006 WL 752826, at *4 (same).

Finally, Plaintiffs could have brought their takings claim when they first brought their state court action.

Plaintiffs allege that the wrongful flooding from surface water began as early as the 1970s (Compl. ¶ 25) and that the County's errors regarding the recharge basin began in 1983 (Id. ¶ 45). Furthermore, Plaintiffs allege that flooding from saltwater began in October 2005. (Id. ¶ 31.) Plaintiffs commenced their state court action on February 1, 2009. (DiCioccio Decl. Ex. D.) Thus, any and all issues relating to Plaintiffs' taking claim existed well before Plaintiffs commenced their state court action. Accordingly, Plaintiffs' takings claims against the Town and the County regarding wrongful flooding are barred by res judicata and are DISMISSED WITH PREJUDICE.

IV.  Failure to State a Claim[7]

As a result of the foregoing adjudications, the only remaining claim against the Town and the County is that of conspiracy, which the Court will discuss below. The only remaining claims against the State Defendants are those that are not barred by the Eleventh Amendment (because they seek injunctive relief or are alleged against Scully and Rail in their individual capacities) and are not otherwise precluded -- i.e., Plaintiffs' claims regarding illegal searches, violations of procedural due process, and violations of their right to

_____

[7] The County has raised several arguments regarding Plaintiffs' failure to state a claim. The Court has already found that Plaintiffs' takings claims against the County are precluded under collateral estoppel and/or res judicata, and therefore the Court will not address the County's additional arguments.

equal protection.  The Court will first address the conspiracy claim against all Defendants, and then turn to each of the remaining claims against the State Defendants.

A.  Conspiracy

The Complaint appears to allege a conspiracy by all Defendants pursuant to 42 U.S.C. § 1985(3).  According to Plaintiffs, "it is clear that the three Defendants in essence have a conspiracy to destroy the Plaintiffs' home and property and take control and ownership the residence [sic] and land without due process." (Compl. ¶ 34.)

As the court in R-Goshen v. Village of Goshen explained

> To state a claim under 42 U.S.C. § 1985(3), [a] [p]laintiff must allege, at a minimum, that Defendants engaged in (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any class of persons of the equal protection of the law, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a member of the class is either injured in his person or property or deprived of any right or privilege [of] a citizen of the United States.

289 F. Supp. 2d 441, 454 (S.D.N.Y. 2003).  In addition, Plaintiffs must allege that the Defendants somehow had a "meeting of the minds" to accomplish this end.  See Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003); Manbeck v. Micka, 640 F. Supp. 2d 351, 379 (S.D.N.Y. 2009).

Here, the Complaint sets forth only vague and conclusory allegations regarding any alleged agreement and therefore, Plaintiffs' conspiracy claim pursuant to 42 U.S.C. § 1985(3) is DISMISSED WITHOUT PREJUDICE. See Manbeck, 640 F. Supp. 2d at 379 (dismissing conspiracy claim based on vague assertions).

B. <u>Illegal Searches</u>

Plaintiffs claim that the DEC has conducted multiple illegal searches, and reference a particular incident in which the "NYSDEC CEO" entered Plaintiffs' Property, executed a search, and cited Plaintiffs for dropping wood chips on the Property along Ludlow Way. (Compl. ¶ 55.)

To overcome a motion to dismiss on a claim under 42 U.S.C. § 1983, a plaintiff must sufficiently allege deprivation of a constitutional right and that the defendant acted "under color of state law." <u>Longo v. Suffolk Cnty. Police Dep't Cnty. of Suffolk</u>, 429 F. Supp. 2d 553, 557 (E.D.N.Y. 2006); <u>Pierce v. Marano</u>, No. 01-CV-3410, 2002 WL 1858772, at *4 (S.D.N.Y. Aug. 13, 2002). In addition, in order to state a claim for relief under Section 1983 against an individual defendant, a plaintiff must allege the personal involvement of the defendant in the alleged constitutional deprivation. <u>Longo</u>, 429 F. Supp. 2d at 558. Thus, a complaint based upon a violation under Section 1983 that does not allege the personal involvement of a

defendant fails as a matter of law.  See Johnson v. Barney, 360
F. App'x 199, 201 (2d Cir. 2010).

In the case at bar, Plaintiffs allege that the "NYSDEC
CEO" entered and illegally searched the property.  At other
points in the brief, Plaintiffs refer to Scully and Rail by name
or by their respective titles of "Director" and "legal counsel."
(Compl. ¶¶ 59-60.)   Accordingly, Plaintiffs have not
sufficiently pled an unconstitutional search as against
Defendants Scully and Rail.  Plaintiffs' claim under 42 U.S.C.
§ 1983 for an illegal search is DISMISSED WITHOUT PREJUDICE.

C.  Procedural Due Process

Plaintiffs allege that the Scully and Rail violated
their constitutional right to procedural due process.  (Compl.
¶ 59-60.)   In the course of prosecuting Plaintiffs for
violations of the Environmental Conservation Law, Scully and
Rail moved, during administrative proceedings, for an order
without a hearing.

"When a person has a property interest that is
terminated, 'procedural due process is satisfied if the
government provides notice and a limited opportunity to be heard
prior to termination, so long as a full adversarial hearing is
provided afterwards.'"  DeMasi v. Benefico, 567 F. Supp. 2d 449,
454 (S.D.N.Y. 2008) (quoting Locurto v. Safir, 264 F.3d 154, 171
(2d Cir. 2001)).

34

Plaintiffs here have not sufficiently pled a procedural due process claim. Plaintiffs were provided notice that the DEC had commenced an action against them, the DEC submitted a motion for an order without a hearing, as they are entitled to pursuant to 6 N.Y.C.R.R. 622.12, and Plaintiffs submitted a total of five responses to that motion. (Cheng Decl. Ex. A.) The DEC commissioner considered the parties' submissions and granted the DEC's motion for an order without a hearing. (Id.)

Plaintiffs then challenged the Commissioner's decision in an Article 78 proceeding. (Cheng Decl. Ex. B.) The case law is well established that "[a]n Article 78 proceeding 'is a perfectly adequate post [-]deprivation remedy." DeMasi, 567 F. Supp. 2d at 454 (quoting Hellenic Am. Neighborhood Action Comm. v. City of N.Y., 101 F.3d 877, 881 (2d Cir. 1996); see also Campo v. N.Y.C. Employees' Retirement Sys., 843 F.2d 96, 102-03 (2d Cir. 1988) ("[W]e hold that the State of New York, through Article 78, offered to Mrs. Campo a due process hearing at a meaningful time and in a meaningful manner.").

Thus, Plaintiffs' procedural due process claims against the State Defendants are DISMISSED WITHOUT PREJUDICE.

D. Equal Protection

In addition to the aforementioned claims, Plaintiffs also allege an equal protection claim against the State

Defendants. Plaintiffs contend that the State Defendants refused to address wrongful flooding by the Town (Compl. ¶ 15) and have selectively prosecuted Plaintiffs (id. ¶ 64). Plaintiffs explicitly state that Defendant Scully has singled out Plaintiffs' property and selectively refuses to prosecute the Town. (Id. ¶¶ 39, 51.) The State Defendants do not address the aforementioned allegations, and therefore Plaintiffs' may proceed with their equal protection claims against the DEC insofar as they seek injunctive relief, and against Scully and Rail in their individual capacities.

## V.  Plaintiffs' Motions

Finally, Plaintiffs have also filed a motion for summary judgment (Docket Entry 22) and have requested "permission to add a class action lawsuit" (Docket Entry 42).

Plaintiffs' summary judgment motion essentially reiterates the same arguments made in their response briefs to Defendants' motions to dismiss and does not add anything additional to the Court's analysis. Given that the Court has dismissed most of Plaintiffs' claims, Plaintiffs' motion for summary judgment is DENIED.

Furthermore, Plaintiffs' request to add a class action lawsuit seeks to bring suit on behalf of those in their community who were affected by a recent hurricane. Plaintiffs assert that after the hurricane, the Town and the County's

faulty engineering became apparent, and a number of homes and businesses in the area were greatly affected. (Docket Entry 42.) Putting aside the merits of this issue, Plaintiffs, as pro se litigants, cannot bring a class action on behalf of their neighbors. See Guest v. Hansen, 603 F.3d 15, 20 (2d Cir. 2010) ("A person who has not been admitted to the practice of law may not represent anybody other than himself."); Nwanze v. Philip Morris Inc., 100 F. Supp. 2d 215, 218 n.3 (S.D.N.Y. 2000) (recognizing "the well established federal rule forbidding pro se plaintiffs from conducting class action litigation"). Therefore, any such request is DENIED.

## CONCLUSION

Defendants' motions to dismiss (Docket Entries 16, 17, 25) are GRANTED.

Defendants' motions are GRANTED with respect to the following claims, which are DISMISSED WITH PREJUDICE:

(1) Claims that Plaintiffs were injured by the actions and judgments in state court proceedings;

(2) Claims against the DEC and against Scully and Rail in their official capacities;

(3) Claims regarding any alleged age discrimination; and

(4) Claims that the Town or the County violated the Takings Clause.

Defendants' motions are also GRANTED with respect to the following claims, which are DISMISSED WITHOUT PREJUDICE:

> (1) Claims of a regulatory taking against the State Defendants;

> (2) Claims of illegal searches against the State Defendants;

> (3) Claims of denial of procedural due process against the State Defendants; and

> (4) Claims that the Defendants conspired against Plaintiffs pursuant to 42 U.S.C. § 1985.

With respect to those claims dismissed without prejudice, the Court is mindful that pro se litigants should generally be afforded leave to file an amended complaint unless their claims are frivolous. See Benitez v. Wolff, 907 F.2d 1293, 1295 (2d Cir. 1990); Zeigler v. DeMarco, No. 12-CV-0785, 2012 WL 928285, at *3 (E.D.N.Y. Mar. 13, 2012). Accordingly, Plaintiffs may file an amended complaint on or before April 1, 2013.

Plaintiffs are also ORDERED TO SHOW CAUSE on or before March 15, 2013 why their claims of substantive due process and equal protection against the State Defendants should not also be dismissed for the reasons outlined in this Memorandum and Order. If Plaintiffs fail to do so, their claims will be dismissed. The State Defendants shall file a response on or before March, 29, 2013.

38

Finally, Plaintiffs' motion for summary judgment (Docket Entry 22) and letter request for a class action (Docket Entry 42) are DENIED.

The Clerk of the Court is directed to mail a copy of this Memorandum and Order to pro se Plaintiffs.

SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     February 12, 2013
           Central Islip, NY