UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
ANTHONY J. SEGRETO and LINDA M.
SEGRETO,

                      Plaintiffs,

          -against-                          MEMORANDUM & ORDER
                                             12-CV-1961(JS)(WDW)
THE TOWN OF ISLIP, THE COUNTY OF
SUFFOLK, NEW YORK STATE DEPARTMENT
OF ENVIRONMENTAL CONSERVATION,
PETER A. SCULLY as director of
NYSDEC Region 1, PETER A. SCULLY,
individually, VERNON RAIL, as
attorney for NYSDEC Region 1, and
VERNON RAIL, individually,

                      Defendants.
--------------------------------------X
APPEARANCES
For Plaintiffs:              Anthony J. Segreto, pro se
                             135 Bluepoint Road
                             Oakdale, NY 11769

                             Linda M. Segreto, pro se
                             512 Third Street
                             Troy, NY 12182

For Defendant Town:          John Ryan DiCioccio, Esq.
                             Islip Town Attorney's Office
                             655 Main Street
                             Islip, NY 11751

For Defendant County:        Leonard G. Kapsalis, Esq.
                             Suffolk County Department of Law
                             100 Veterans Highway
                             P.O. Box 6100
                             Hauppauge, NY 11788

For Defendants DEC,
Scully, and Rail:            Issac C. Cheng, Esq.
                             N.Y.S. Attorney General's Office
                             120 Broadway, 26th Floor
                             New York, NY 10271

SEYBERT, District Judge:

On February 12, 2013, this Court issued a Memorandum and Order (the "First Dismissal Order") dismissing plaintiffs Anthony Segreto and Linda Segreto's (together, "Plaintiffs") Complaint, granting Plaintiffs leave to replead those claims that had been dismissed without prejudice, and ordering Plaintiffs to show cause why certain claims should proceed. On March 28, 2013, Plaintiffs filed an Amended Complaint. As in the original Complaint, Plaintiffs raised various claims for constitutional violations against the Town of Islip (the "Town"), the County of Suffolk (the "County"), New York State Department of Environmental Conservation (the "DEC"), Peter A. Scully ("Scully"), and Vernon Rail ("Rail," and together with the DEC and Scully, the "State Defendants"). Currently pending before the Court are: (1) Plaintiffs' response to the Order to Show Cause (Docket Entry 47), (2) the County's motion to dismiss the Amended Complaint (Docket Entry 53), and (3) the Town's motion to dismiss the Amended Complaint (Docket Entry 55). For the following reasons, Plaintiffs' claims against the State Defendants as discussed in the response to the Order to Show Cause are DISMISSED, with partial leave to replead as outlined herein. The Town's and County's respective motions to dismiss the Amended Complaint as against them are GRANTED.

I. Factual Background

The Court presumes familiarity with the facts of this case, which are detailed in the Court's First Dismissal Order. The allegations in the Amended Complaint primarily add to those in the original, and therefore the Court will not reiterate the facts at length here.[1]

Briefly, however, this action involves Plaintiffs' property at 135 Bluepoint Road in Oakdale, New York (the "Property"). Plaintiffs allege that the Town has been flooding the Property with contaminated cesspool water. (See First Dismissal Order at 3; see also Am. Compl., Docket Entry 51, ¶¶ 16-17 (alleging that the Town built "a series of partially concealed culverts and/or underground pipes" through which it releases water onto the Property).) Likewise, they have alleged that the County has contributed to flooding on the Property through its creation of a toxic recharge basin which empties onto the Property. (First Dismissal Order at 3-4.) Additionally, Plaintiffs assert that the Town "created" a parcel of land ("Parcel #37" or "Deer Lake") and then improperly

---

[1] When necessary, the Court will note the relevant differences between the original and amended complaints. Additionally, the Court presumes the truth of the allegations asserted in the Amended Complaint for the purposes of the Town's and County's respective motions to dismiss the Amended Complaint.

exercised ownership over it.  (First Dismissal Order at 3; Am. Compl. ¶ 21.)

According to Plaintiffs, the flooding has not only caused significant erosion, but the DEC has also determined that portions of the Property are "wetlands" under the New York Tidal Wetlands Act.  (First Dismissal Order at 4.)  As such, the DEC has not permitted Plaintiffs to repair bulkheads on the Property and has "prosecuted [P]laintiffs for alleged violations" of the Tidal Wetlands Act.  (Am. Compl. ¶ 47; see also First Dismissal Order at 4-5.)  Moreover, the original Complaint alleges that the State Defendants conducted several illegal searches of the Property.  (First Dismissal Order at 5.)  The Amended Complaint alleges that all Defendants conducted illegal searches of the Property.  (Am. Compl. ¶¶ 61-66.)  Finally, Plaintiffs maintain that Defendants have conspired to violate Plaintiffs' constitutional rights.  (First Dismissal Order at 5; Am. Compl. ¶¶ 70-77.)

## II. Procedural Background

There are several events particularly relevant to the procedural background of this case.  First, the DEC commenced an administrative action against Plaintiffs in 2007 charging Plaintiffs with violating the New York State Tidal Wetlands Act by clearing vegetation and causing "the placement of fill." (First Dismissal Order at 6 (quoting Cheng Decl. Ex. A).)  The

4

DEC sought an order without a hearing, which the Commissioner of the DEC granted on February 1, 2008. (First Dismissal Order at 6.)

Second, Plaintiffs commenced an action in the Supreme Court of the State of New York, County of Suffolk, pursuant to N.Y. C.P.L.R. Article 78 against the Town, the County, Scully, and Rail on February 15, 2008. (First Dismissal Order at 6 (citing DiCioccio Decl. Ex. B).) Plaintiffs sought relief from flooding and to challenge the DEC's decisions to enforce wetlands regulations. (First Dismissal Order at 6.) The Supreme Court dismissed the action because an Article 78 proceeding was not the proper vehicle and because Plaintiffs had not identified a basis to disturb the DEC's determination. (First Dismissal Order at 6 (citing DiCioccio Decl. Ex. C).)

Third, on February 4, 2009, Plaintiffs commenced an action in Suffolk County Supreme Court. (First Dismissal Order at 7 (citing DiCioccio Decl. Ex. D).) This time, Plaintiffs brought the action against the Town and County only regarding flooding on the Property. (First Dismissal Order at 7.) The Supreme Court ultimately granted the Town and County's respective motions for summary judgment. (First Dismissal Order at 7.)

Fourth, Plaintiffs commenced the instant action on May 22, 2012. Following motions to dismiss by the respective

Defendants, the Court issued its First Dismissal Order on February 12, 2013. The Court characterized the original Complaint as containing the following claims: (1) injury by the state court; (2) the Town and the County violated the Takings Clause by wrongfully flooding the Property and transferring ownership of Deer Lake; (3) the State Defendants violated the Takings Clause by wrongfully flooding the Property, denying Plaintiffs of procedural due process, and acting arbitrarily and capriciously in regulating Plaintiffs' Property; (4) the State Defendants conducted illegal searches on the Property; (5) the State Defendants engaged in age discrimination; (6) the State Defendants potentially violated RICO and thus the Court should order an investigation; and (7) the Defendants conspired to violate Plaintiffs' constitutional rights. The Court dismissed several of the claims with prejudice, namely: (1) injury by the state court, (2) violations of the Takings Clause by the Town and County, (3) age discrimination against the State Defendants, and (4) any claims against the DEC for monetary relief and against Scully and Rail in their official capacities. The remaining claims were dismissed without prejudice and with leave to replead. The Court also ordered Plaintiffs to show cause why their claims of equal protection and substantive due process against the State Defendants should proceed. Plaintiffs filed a response to the Order to Show Cause on March 11, 2013 (Docket

Entry 47) and an Amended Complaint on March 28, 2013 (Docket Entry 51.)

Although the Amended Complaint alleges the same basic factual allegations, it asserts the following causes of action: (1) a substantive due process claim against the State Defendants, (2) an equal protection claim against the State Defendants, (3) regulatory taking against the State Defendants, (4) "illegal searches" against all Defendants, (5) a procedural due process claim against the State Defendants, and (6) conspiracy against all Defendants.

## DISCUSSION

Before turning to the motions and Order to Show Cause at issue, the Court will first address Plaintiffs' requests, contained within their response to the Order to Show Cause, for reconsideration of the First Dismissal Order and for the opportunity to provide further responses. The Court will then consider whether Plaintiffs have adequately stated their claims against the State Defendants, followed by an analysis of whether the Amended Complaint rectifies the deficiencies in Plaintiffs' claims against the Town and County.

## I. Plaintiffs' Requests in their Response

Although not filed as a formal motion, Plaintiffs' response to the Order to Show Cause requests reconsideration of

the First Dismissal Order and an extension of time to further respond.

## A. Reconsideration

### 1. Legal Standard

Motions for reconsideration may be brought pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure and Local Civil Rule 6.3. See Wilson v. Pessah, No. 05-CV-3143, 2007 WL 812999, at *2 (E.D.N.Y. Mar. 14, 2007). A motion for reconsideration is appropriate when the moving party believes the Court overlooked important "matters or controlling decisions" that would have influenced the prior decision. Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999) (internal quotation marks and citation omitted). Reconsideration is not a proper tool to repackage and relitigate arguments and issues already considered by the Court in deciding the original motion. See United States v. Gross, No. 98-CR-0159, 2002 WL 32096592, at *4 (E.D.N.Y. Dec. 5, 2002) ("A party may not use a motion to reconsider as an opportunity to reargue the same points raised previously."). Nor is it proper to raise new arguments and issues. See Lehmuller v. Inc. Vill. of Sag Harbor, 982 F. Supp. 132, 135 (E.D.N.Y. 1997). Reconsideration may only be granted when the Court did not evaluate decisions or data "that might reasonably be expected to alter the conclusion reached by the Court." Wechsler v. Hunt Health Sys., 186 F.

Supp. 2d 402, 410 (S.D.N.Y. 2002) (internal quotation marks and citation omitted).

## 2. Reconsideration Not Warranted

At various points in their response to the Order to Show Cause, Plaintiffs assert that the Court misunderstood facts in this case and that the Court is "clueless." (See, e.g., Pls.' Resp. to OTSC, Docket Entry 47, at 2-3.) Plaintiffs then go on, however, to reiterate the same arguments that they have made throughout the course of the litigation. For example, Plaintiffs again emphasize that the Property historically was dry land. (See generally Pls.' Resp. to OTSC.) The Court acknowledged this allegation and presumed it to be true in the First Dismissal Order. (See First Dismissal Order at 4 (discussing Plaintiffs' claim that the land is "wet" due to wrongful flooding).) Ultimately, the Court premised its order on specific legal principles. Other than blanket assertions that "res judicata and collateral estoppel is not an issue in the taking of land," Plaintiffs have not come forth with any case law or matter that the Court has overlooked and that would have changed its decision. (Pls.' Resp. to OTSC at 11.) Accordingly, insofar as Plaintiffs seek reconsideration, their request is DENIED.

As such, the Court notes that it has dismissed certain claims with prejudice, particularly Plaintiffs' claims against

the Town and County based upon the Takings Clause. Insofar as the Amended Complaint seeks to reallege such claims, they cannot do so. These claims are no longer a part of the case and they are not actionable.

B. Extension of Time

Plaintiffs have also requested an extension of time in order to retain counsel and further respond. (Pls.' Resp. to OTSC at 22.) This particular case has been pending before the Court for over a year and a half, and Plaintiffs have been litigating these issues for even longer. Moreover, Plaintiffs have submitted lengthy and numerous submissions throughout the course of this case. In fact, Plaintiffs submitted nearly forty pages in response to the Order to Show Cause alone. The Court finds that additional extensions of time and additional briefing are unnecessary and therefore Plaintiffs' requests are DENIED.

II. Claims Against the State Defendants

As it pertains to the State Defendants, the First Dismissal Order ordered Plaintiffs to show cause as to why their substantive due process and equal protection claims should proceed, dismissed without prejudice Plaintiffs' claims for procedural due process and a Fourth Amendment violation against the State Defendants, and left open whether Plaintiffs had stated a claim against the State Defendants regarding illegal flooding of the Property constituting a taking. The Court will

begin with the claims subject to the Order to Show Cause, followed by a brief discussion regarding any potential takings claim against the State Defendants.  As to the remaining claims that have been dismissed without prejudice, Plaintiffs have filed an Amended Complaint, and the State Defendants have sought an extension of time thereto until twenty-one days after the Court decides the Order to Show Cause.  (See Docket Entry 52.) The Court granted that motion, and therefore will not substantively address those claims at this time.

    A. Substantive Due Process

        The Court, in its First Dismissal Order, noted that Plaintiffs allege a substantive due process claim against the State Defendants and that courts have applied a ripeness analysis to certain substantive due process claims.  (First Dismissal Order at 22.)  Although neither party has specifically addressed ripeness, the Court finds that dismissal is appropriate.

        The ripeness inquiry outlined in the First Dismissal Order applies in regulatory takings claims, such as those involving zoning land use.  See, e.g., Zito v. Town of Babylon, 534 F. App'x 25, 28 (2d Cir. 2013); Country View Estates @ Ridge LLC v. Town of Brookhaven, 452 F. Supp. 2d 142, 149 (E.D.N.Y. 2006).  Although it was initially unclear whether the ripeness inquiry would apply in these particular circumstances,

Plaintiffs' response to the Order to Show Cause, as well as the State Defendants' reply thereto, makes clear that Plaintiffs' purported substantive due process claim is based on a theory of selective enforcement. For example, the original Complaint alleges that the DEC has not prosecuted the Town for allegedly causing flooding to the Property, but has arbitrarily and capriciously prosecuted Plaintiffs. (Compl. ¶ 64.)

Thus, putting issues of ripeness aside, it is apparent that Plaintiffs' substantive due process claim is duplicative of their equal protection claim. See Sula v. City of Watervliet, No. 06-CV-0316, 2006 WL 2990489, at *3 (N.D.N.Y. Oct. 19, 2006) (finding "that plaintiff's substantive due process claim against defendants must be dismissed, but not for the reasons proffered by defendants"). As the Court stated in the First Dismissal Order, Plaintiffs' equal protection claim alleges that the State Defendants refused to address wrongful flooding by the Town and have selectively prosecuted Plaintiffs. (First Dismissal Order at 36.)

The Due Process Clause of the Fourteenth Amendment protects persons against deprivations of "life, liberty, or property." U.S. CONST. amend. XIV, § 1. Thus, to establish a violation of substantive due process, Plaintiffs must first identify a valid liberty or property interest. See Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 503 (2d Cir.

2001); <u>Toussie v. Cnty. of Suffolk</u>, 806 F. Supp. 2d 558, 579
(E.D.N.Y. 2011).  Here, even assuming Plaintiffs have identified
a protected property interest, their claim for substantive due
process cannot stand.  In <u>Albright v. Oliver</u>, 510 U.S. 266, 114
S. Ct. 807, 127 L. Ed. 2d 114 (1994), the Supreme Court held
that "[w]here a particular Amendment provides an explicit
textual source of constitutional protection against a particular
sort of government behavior, that Amendment, not the more
generalized notion of 'substantive due process,' must be the
guide for analyzing these claims." (internal quotation marks and
citation omitted.)  Thus, courts in this circuit have held that,
where a substantive due process claim is duplicative of an equal
protection claim, the substantive due process claim should be
dismissed.  <u>See</u> <u>Terminate Control Corp. v. Horowitz</u>, 28 F.3d
1335, 1351 n.8 (2d Cir. 1994) ("In the factual context of this
case, the substantive due process analysis is duplicative of the
equal protection analysis . . . ."); <u>Rother v. NYS Dep't of
Corr. & Cmty. Supervision</u>, --- F. Supp. 2d ----, 2013 WL
4774484, at *13 (N.D.N.Y. Sept. 4, 2013) ("Because the claim for
substantive due process is subsumed by Plaintiff's other
constitutional claims, it must be dismissed."); <u>Roman v.
Velleca</u>, No. 11-CV-1867, 2012 WL 4445475, at *10 (D. Conn. Sept.
25, 2012) ("Under [<u>Albright</u>], substantive due process claims

must be dismissed where they are merely duplicative of claims explicitly protected under other constitutional sources.").

As Plaintiffs' substantive due process claim merely duplicates their equal protection claim against the State Defendants, it is DISMISSED WITH PREJUDICE.

B. <u>Equal Protection</u>

The Court's First Dismissal Order also noted that Plaintiffs raised an equal protection claim against the State Defendants, which the State Defendants had not addressed in their motion to dismiss. (First Dismissal Order at 36.) The Court ordered Plaintiffs to show cause as to why this claim should proceed, and Plaintiffs have submitted a response. The State Defendants have also submitted a reply, in which they argue that an agency's exercise of ordinary discretion in enforcement is not sufficient grounds for an equal protection claim, that Plaintiffs have not sufficiently alleged others that are similarly situated, and that Plaintiffs have not sufficiently alleged discriminatory intent. (State Defs.' OTSC Reply, Docket Entry 50, at 4-5.) The Court finds that Plaintiffs have failed to state an equal protection claim against the State Defendants.

"The Equal Protection Clause of the Fourteenth Amendment requires the government to treat similarly situated persons alike." <u>Missere v. Gross</u>, 826 F. Supp. 2d 542, 560

(S.D.N.Y. 2011). Here, Plaintiffs appear to allege an equal protection claim under a selective enforcement and/or "class of one" theory. See id.

In order to adequately allege a selective enforcement claim, a plaintiff must allege: "(1) [he was] treated differently from other similarly situated individuals and (2) this differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." MacPherson v. Town of Southampton, 738 F. Supp. 2d 353, 370 (E.D.N.Y. 2010) (internal quotation marks and citations omitted). Alternatively, where a plaintiff does not plead selective treatment based upon impermissible considerations, he can also allege a "class of one" equal protection claim. Id. "In order to adequately allege an equal protection claim on a 'class of one' theory, a plaintiff must demonstrate that: (1) he was 'intentionally treated differently from others similarly situated,' and (2) 'that there is no rational basis for the difference in treatment.'" Vaher v. Town of Orangetown, N.Y., 916 F. Supp. 2d 404, 433 (S.D.N.Y. 2013) (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000) (per curiam)).

The State Defendants initially argue that "[a]n agency's exercise of ordinary discretion in enforcement is not sufficient grounds for an equal protection claim." (State Defs.' OTSC Reply at 4-5 (citing Engquist v. Or. Dep't of Agric., 553 U.S. 591, 604, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008)).) The Engquist case, to which the State Defendants cite, addressed a "class of one" equal protection theory in the context of public employees. Its scope outside of that context is somewhat unclear. See Engquist, 553 U.S. at 603-04; 128 S. Ct. at 2154; see also Sharpe v. City of N.Y., No. 11-CV-5494, 2013 WL 2356063, at * 4 n.6 (E.D.N.Y. May 29, 2013) ("There is confusion within this Circuit as to the distinction between a 'class of one' and a 'selective enforcement' equal protection claim and, as a result, the law in this Circuit is unsettled as to whether public employees' claims asserted under the 'selective enforcement' theory can survive in light of Engquist."); Vlahadamis v. Kiernan, 837 F. Supp. 2d 131, 144-45 (E.D.N.Y. 2011) (declining to take a broad view of Engquist), as amended by 2011 WL 5156340 (E.D.N.Y. Oct. 28, 2011).

Nonetheless, both selective enforcement and class of one require that the plaintiff sufficiently plead the existence of "similarly situated" others, an element that the State Defendants maintain Plaintiffs have also failed to adequately allege. Courts in this Circuit are split regarding the

definition of "similarly situated" in selective enforcement and class of one cases.  Some courts have held that the definitions are the same in both cases, and the plaintiff must

> establish that (i) no rational person could
> regard the circumstances of the plaintiff to
> differ from those of a comparator to a
> degree that would justify the differential
> treatment on the basis of a legitimate
> government policy; and (ii) the similarity
> in circumstances and difference in treatment
> are sufficient to exclude the possibility
> that the defendants acted on the basis of a
> mistake.

Roman Catholic Diocese of Rockville Centre, N.Y. v. Inc. Vill. of Old Westbury, No. 09-CV-5195, 2012 WL 1392365, at *12 (E.D.N.Y. Apr. 23, 2012) (internal quotation marks and citations omitted) (collecting cases).  Other courts have applied a somewhat less stringent standard in selective enforcement cases, requiring "plaintiffs to show that plaintiff and comparators were 'similarly situated in all material respects,' or that 'a prudent person, looking objectively at the incidents, would think them roughly equivalent.'"  Missere, 826 F. Supp. 2d at 561 (quoting Vassallo v. Lando, 591 F. Supp. 2d 172, 184 (E.D.N.Y. 2008); Yajure v. DiMarzo, 130 F. Supp. 2d 568, 572 (S.D.N.Y. 2001)).

Even applying the less stringent standard, Plaintiffs have failed to allege others that are "similarly situated."  The Complaint at times refers to the Town as a comparator (Compl. at

15-16), and at times vaguely mentions other neighbors (Compl. at 20 ("Throughout this area there are homes on the Great South Bay that are allowed to be build [sic], and get permits.")). Although the analysis of whether a comparator is similarly situated may present a question of fact inappropriate to decide at the motion to dismiss stage, see Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills, 815 F. Supp. 2d 679, 705 n.17 (S.D.N.Y. 2011), Plaintiff's allegations regarding the Town do not present a plausible claim. See Vaher, 916 F. Supp. 2d at 434 ("While a plaintiff is not required to proffer evidence of similarly situated individuals at the motion to dismiss stage, the court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated.") (internal quotation marks and citation omitted). Plaintiffs must "allege facts showing that [they are] similarly situated to other persons with respect to the specific incident or incidents that are alleged to be examples of differential treatment." Missere, 826 F. Supp. 2d at 561.

Moreover, Plaintiffs' allegations regarding neighbors are vague. Plaintiffs merely allege that others are allowed to get permits, but it is unclear whether those properties have any circumstances similar to Plaintiffs. At points, Plaintiffs have argued that others have been subject to flooding. (Pls.' Resp.

to OTSC at 25.)  They have not, however, alleged that others who have been subject to flooding have been given permits that Plaintiffs have been denied, nor have they alleged who these "others" are besides very general vague assertions.

Accordingly, the State Defendants' motion to dismiss Plaintiffs' equal protection claim against them as alleged in the original Complaint is GRANTED and this claim is DISMISSED WITHOUT PREJUDICE.

C. Taking Due to Illegal Flooding

In the First Dismissal Order, the Court concluded that, liberally reading the original Complaint, Plaintiffs appeared to have alleged a Takings Clause violation against the State Defendants due to wrongful flooding of the Property. (First Dismissal Order at 8.)  However, Plaintiffs' response to the Order to Show Cause makes clear that the State Defendants have not engaged in any alleged flooding themselves.  For example, Plaintiffs continually assert that the Town and County caused flooding through faulty engineering, only after which the DEC then determined the Property to be wetlands.  (See Pls.' Resp. to OTSC at 20, 24, 27, 33.)  Accordingly, to the extent that the original Complaint alleges a takings claim against the State Defendants due to alleged illegal flooding, the State Defendants' motion to dismiss the Complaint in this regard is GRANTED and this claim is DISMISSED WITH PREJUDICE.

III. <u>Claims Against the Town and County</u>

The Amended Complaint explicitly raises two causes of action against the Town and County--illegal searches and conspiracy. The Court will consider each of these claims in turn.

A. <u>Illegal Searches Against the Town and County</u>

Plaintiffs' claims for illegal searches raises a claim for violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983 ("Section 1983"). To properly plead a claim under Section 1983, a plaintiff must sufficiently allege "deprivation of constitutional rights" and that the defendant acted under color of state law. <u>Longo v. Suffolk Cnty. Police Dep't Cnty. of Suffolk</u>, 429 F. Supp. 2d 553, 557 (E.D.N.Y. 2006) (internal citation omitted); <u>Pierce v. Marano</u>, No. 01-CV-3410, 2002 WL 1858772, at *4 (S.D.N.Y. Aug. 13, 2002). Additionally, to state a claim for relief against an individual defendant, the plaintiff must allege the personal involvement of the defendant in the alleged constitutional deprivation. <u>Longo</u>, 429 F. Supp. 2d at 558.

Both the Town and County argue that Plaintiffs' claim of illegal searches as alleged in the Amended Complaint must be dismissed because, <u>inter alia</u>, Plaintiffs have not alleged any personal involvement. (<u>See</u> Town's Br. to Dismiss, Docket Entry 55-4, at 6; County's Br. to Dismiss, Docket Entry 53-4, at 4.)

The Court agrees. Preliminarily, the Court notes that Plaintiffs did not raise any Fourth Amendment claim against the Town or the County in the original Complaint, nor have they alleged that any Town or County employee was involved in a search of the Property. (See, e.g., Compl. at 17, 31 (alleging only that the DEC has conducted illegal searches).) Rather, the original Complaint alleges that the "NYSDEC CEO" illegally entered the Property on a particular occasion "to execute a search and writ[e] a citation for some gardener dropping wood chips on the [P]laintiffs' property along Ludlow Way. This CEO had his hand on his gun all the time . . . ." (Compl. at 18.)

The Amended Complaint now alleges that the Town, County, and DEC have conducted warrantless searches and that Defendant Rail advised DEC employees that their "trespass" onto the Property was legal. (Am. Compl. ¶¶ 34-36, 42.) Specifically, the Amended Complaint also asserts that "Defendants NYSDEC, under the direction and supervision of SCULLY and RAIL, the Town of Islip, and County of Suffolk, acting under the color of law, unlawfully and without the Segreto[ ]'s consent forcibly entered the Segreto[ ]'s Home Site . . . ." (Am. Compl. ¶ 61.) Plaintiffs have not alleged that any particular individuals from the Town or County were involved in a search or illegal entry onto the Property.

Moreover, a municipality may not be held liable under Section 1983 for alleged unconstitutional actions committed by its employees solely on the basis of respondeat superior. Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Rather, "to hold a municipality liable in such an action, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (internal quotation marks and citation omitted). To the extent that the Amended Complaint can be read to assert a custom or policy against the Town or County at all, such allegations are conclusory and therefore insufficient. See Dwares v. City of N.Y., 985 F.2d 94, 100 (2d Cir. 1993) ("The mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.").

Accordingly, the Town and County's respective motions to dismiss the Amended Complaint in this regard are GRANTED and Plaintiffs' claims of illegal searches against them are DISMISSED.

B. Conspiracy Against the Town and County

Plaintiffs also allege that Defendants conspired to violate their constitutional rights pursuant to 42 U.S.C. § 1985(3). The Town and County maintain that the Amended Complaint fails to state a claim for conspiracy. The Court agrees.

As the Court explained in its First Dismissal Order,

> To state a claim under 42 U.S.C. § 1985(3), [a] [p]laintiff must allege, at a minimum, that Defendants engaged in (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any class of persons of the equal protection of the law, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a member of the class is either injured in his person or property or deprived of any right or privilege [of] a citizen of the United States.

(First Dismissal Order at 32 (quoting R-Goshen v. Vill. of Goshen, 289 F. Supp. 2d 441, 454 (S.D.N.Y. 2003)). Moreover, Plaintiffs must allege a "meeting of the minds." (First Dismissal Order at 32 (citing Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003); Manbeck v. Micka, 640 F. Supp. 2d 351, 379 (S.D.N.Y. 2009)).)

The Amended Complaint fails to rectify the deficiencies in pleading a claim of conspiracy identified in the First Dismissal Order. Plaintiffs conclusorily assert that Defendants "agreed" and "conspired" to violate Plaintiffs'

constitutional rights. (Am. Compl. ¶¶ 31, 43, 74.) In fact, the Amended Complaint alleges that Plaintiffs are "informed and believe" that Defendants "met and agreed" to take certain actions. (Am. Compl. ¶ 74.) They do not allege how they are so informed or why they have such a belief, other than sheer conjecture. As such, Plaintiffs' allegations are insufficient. See Friends of Falun Gong v. Pacific Cultural Enter., Inc., 288 F. Supp. 2d 273, 279 (E.D.N.Y. 2003) ("'A complaint consisting of nothing more than conclusory or vague allegations of conspiracy is insufficient to survive a motion to dismiss.'" (quoting Vertical Broad., Inc. v. Town of Southampton, 84 F. Supp. 2d 379, 389-90 (E.D.N.Y. 2000)).

Accordingly, the Town's and County's respective motions to dismiss the Amended Complaint insofar as it alleges a claim of conspiracy against them are GRANTED.

IV. Amendment and Outstanding Issues

Finally, the Court notes that Plaintiffs have previously been given the opportunity to amend their Complaint and that, given the state of the litigation, there are some remaining issues still outstanding.

First, courts should grant leave to amend "when justice so requires." FED. R. CIV. P. 15(a)(2). As to Plaintiffs' claims against the Town and County, Plaintiffs have already attempted to rectify a multitude of deficiencies via the

Amended Complaint, but have failed to do so.  Any further amendment as to those defendants would be futile, and therefore is DENIED.  The Clerk of the Court is directed to TERMINATE the Town and the County as defendants in this action.

Second, the Court has granted the State Defendants an extension to respond to the Amended Complaint until twenty-one days after the Order to Show Cause was decided.  Thus, whether the Amended Complaint sufficiently alleges claims as against them is not before the Court at this time.  However, the Court finds that, in the interest of justice, Plaintiffs should be given one final opportunity to state an equal protection claim. As the State Defendants have not yet responded to the Amended Complaint, Plaintiffs must file a single Complaint, labeled as a Second Amended Complaint, alleging all of their claims still viable against the State Defendants.  Specifically, Plaintiffs may amend as to their equal protection claim in order to rectify the deficiencies outlined above, as well as their claims of procedural due process and an illegal search, which were dismissed without prejudice in the First Dismissal Order.

Finally, although Plaintiffs' conspiracy claim was dismissed without prejudice in the First Dismissal Order, the Court finds that any further amendment as to the State Defendants would be futile for the same reasons as outlined herein with respect to the conspiracy claim against the Town and

the County. Plaintiffs' takings claim based upon illegal flooding as well as Plaintiffs' claim for substantive due process have been dismissed with prejudice and therefore are no longer viable.

CONCLUSION

For the foregoing reasons, the Town's and the County's respective motions to dismiss the Amended Complaint are GRANTED and the Clerk of the Court is directed to TERMINATE them as defendants in this action.

Additionally, Plaintiffs' substantive due process, takings, and conspiracy claims against the State Defendants are DISMISSED WITH PREJUDICE. Moreover, insofar as Plaintiffs' submissions seek reconsideration of the First Dismissal Order and/or an extension of time to file further responses, such requests are DENIED.

Finally, Plaintiffs may file a Second Amended Complaint to allege claims against the State Defendants for equal protection, procedural due process, and an illegal search. If Plaintiffs intend to do so, they must file a Second Amended Complaint within twenty (20) days of the date of this Memorandum and Order. If they do not do so, the Amended Complaint will remain the operative document, the equal protection claim will be dismissed with prejudice, and the State Defendants will have the opportunity to answer. Accordingly, the time for the State

Defendants to file an answer will be extended to forty-one (41) days after the date of this Memorandum and Order.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is DENIED for purpose of an appeal.  Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

The Clerk of the Court is directed to mail a copy of this Memorandum and Order to pro se Plaintiffs.


SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     February __24__, 2014
           Central Islip, NY