UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
ANTHONY J. SEGRETO and LINDA M.
SEGRETO,

                    Plaintiffs,

          -against-                          MEMORANDUM & ORDER
                                             12-CV-1961(JS)(SIL)
NEW YORK STATE DEPARTMENT
OF ENVIRONMENTAL CONSERVATION,
PETER A. SCULLY as Director of
NYSDEC REGION 1, PETER A. SCULLY,
individually, VERNON RAIL, as
attorney for NYSDEC REGION 1, and
VERNON RAIL, individually,

                    Defendants.
----------------------------------------X
APPEARANCES
For Plaintiffs:     Patricia Byrne Blair, Esq.
                    Mazzei & Blair
                    9-B Montauk Highway
                    Blue Point, NY 11715

For Defendants:     Issac C. Cheng, Esq.
                    New York State Attorney General's Office
                    120 Broadway, 26th Floor
                    New York, NY 10271

SEYBERT, District Judge:

          Plaintiffs Anthony Segreto and Linda Segreto (together,

"Plaintiffs") commenced this action on May 22, 2012 against the

Town of Islip (the "Town"), the County of Suffolk (the "County"),

New York State Department of Environmental Conservation (the

"DEC"), Peter A. Scully ("Scully"), and Vernon Rail ("Rail," and

together with the DEC and Scully, the "State Defendants") alleging

constitutional violations related to their property located in

Oakdale, New York.  On February 12, 2013, this Court issued a Memorandum and Order (the "First Dismissal Order") dismissing Plaintiffs' Complaint, granting Plaintiffs leave to replead those claims that were dismissed without prejudice, and ordering Plaintiffs to show cause why certain claims should proceed. (Docket Entry 46.)  On March 28, 2013, Plaintiffs filed an Amended Complaint.  (Docket Entry 51.)  As in the original Complaint, Plaintiffs asserted various claims for constitutional violations against the Town, the County, and the State Defendants.  On February 24, 2014, this Court issued a second Memorandum and Order (the "Second Dismissal Order") dismissing the remainder of Plaintiffs' claims against the Town and the County, but allowing Plaintiffs' "one final opportunity" to file a Second Amended Complaint setting forth Plaintiffs' remaining claims against the State Defendants.  (Docket Entry 66.)  The Second Dismissal Order made clear that if Plaintiffs did not file a Second Amended Complaint the Amended Complaint would "remain the operative document" and the State Defendants would be permitted to answer. Plaintiffs have not filed a Second Amended Complaint and their time to do so has expired.

The State Defendants now move to dismiss Plaintiffs' remaining causes of action set forth in the Amended Complaint. (Docket Entry 67.)  For the following reasons, the State

Defendants' motion to dismiss is GRANTED, and Plaintiffs'
remaining causes of action are DISMISSED WITH PREJUDICE.

BACKGROUND[1]

I. Factual Background

The Court presumes familiarity with the facts of this
case, which are detailed in the Court's First and Second Dismissal
Orders.   Briefly,   however,   this   action   involves   Plaintiffs'
property   at   135   Bluepoint   Road   in   Oakdale,   New   York   (the
"Property").   Plaintiffs allege that the Town has been flooding
the Property with contaminated water.   (See First Dismissal Order
at 3-4; see also Am. Compl., Docket Entry 51, ¶¶ 16-17 (alleging
that the Town built "a series of partially concealed culverts
and/or underground pipes" through which it releases water onto the
Property).)   Likewise,   Plaintiffs   allege   that   the   County
contributed to flooding on the Property through its creation of a
toxic   recharge   basin   which   empties   onto   the   Property.   (First
Dismissal Order at 3-4.)

According to Plaintiffs, the flooding caused significant
erosion and the DEC determined that portions of the Property are
"wetlands" under the New York Tidal Wetlands Act.   (First Dismissal

---

[1] The following facts are taken from the Amended Complaint and
are presumed to be true for the purposes of this Memorandum and
Order.   The Court will also reference the allegations set forth
in the original Complaint where necessary.

Order at 4.)  As such, the DEC did not allow Plaintiffs to repair bulkheads on the Property and "prosecuted [P]laintiffs for alleged violations" of the Tidal Wetlands Act.  (Am. Compl. ¶ 47; see also First Dismissal Order at 4-5.)  The original Complaint also alleges that the State Defendants conducted several illegal searches of the Property.  (First Dismissal Order at 5.)  The Amended Complaint alleges that all Defendants conducted illegal searches of the Property.  (Am. Compl. ¶¶ 61-66.)

Plaintiffs assert in their Amended Complaint that the Town and the NYSDEC refused to grant them permission to restore the bulkheads on their property and refused to grant them a "fair and impartial hearing on the matter."  (Am. Compl. ¶ 20.)  As a result, Plaintiffs' stated that they "unsuccessfully pursued a number of administrative remedies" in an effort to "stop the inland flooding."  (Am. Compl. ¶ 38).  In fact, the DEC commenced an administrative action against Plaintiffs in 2007 charging Plaintiffs with violating the New York State Tidal Wetlands Act by clearing vegetation and causing "the placement of fill."  (Cheng. Aff., Docket Entry 9-2, Ex. A.)  The DEC sought an order without a hearing, pursuant to 6 N.Y.C.R.R. 622.12, which the Commissioner of the DEC granted on February 1, 2008.  (Cheng. Aff. Ex. A.)

Plaintiffs then commenced an action in the Supreme Court of the State of New York, County of Suffolk, pursuant to Article 78 of the New York Civil Practice Law and Rules against the Town,

4

the County, Scully, and Rail on February 15, 2008. (Compl. ¶ 68; DiCioccio Decl., Docket Entry 16, Ex. B.) In that action, Plaintiffs sought relief from the "flooding of their real property" which they contended was caused by actions of the Respondents and to challenge the DEC's decisions to enforce the wetlands regulations. (DiCioccio Decl. Ex. C.) The Supreme Court dismissed the action, finding that Article 78 was not the proper proceeding for the relief sought and that "the Petitioners have failed to identify any basis to disturb" the DEC's determination. (DiCioccio Decl. Ex. C.)

On February 4, 2009, Plaintiffs commenced a similar action, again in the New York State Supreme Court, Suffolk County, this time against the Town and the County only. (DiCioccio Decl. Ex. D.) Plaintiffs re-alleged their claims regarding flooding of the property, including flooding from saltwater, and claimed that the County was artificially diverting water onto the Property through a faulty sewer drainage system. (DiCioccio Decl. Ex. D.) The Town and the County separately moved for summary judgment. The Supreme Court granted summary judgment in favor of the County on March 14, 2011 and granted summary judgment in favor of the Town on November 17, 2011. (DiCioccio Decl. Exs. E, F.)

Plaintiffs alleged in their first Complaint that the DEC conducted several illegal searches of the Property and on one occasion the "NYSDEC CEO" entered the Property, conducted a search,

and issued a citation for putting wood chips down.  (Compl. ¶ 55.)
Plaintiffs claim in the Amended Complaint that on "numerous
occasions" DEC employees "forcibly entered" Plaintiffs' home,
detained them at gunpoint, and conducted warrantless searches of
their homes.  (Am. Compl. ¶61.)  Plaintiffs further allege that
these searches were undertaken under the "direction and
supervision" of Peter A. Scully, a DEC Director, and Peter Rail,
a DEC attorney.  (Am. Compl. ¶ 61.).

II. Procedural Background

Plaintiffs commenced this lawsuit on May 22, 2012.  The
original Complaint contained the following claims: (1) injury by
the state court; (2) the Town and the County violated the Takings
Clause by wrongfully flooding the Property and transferring
ownership of Deer Lake; (3) the State Defendants violated the
Takings Clause by wrongfully flooding the Property, denying
Plaintiffs of procedural due process, and acting arbitrarily and
capriciously in regulating Plaintiffs' Property; (4) the State
Defendants conducted illegal searches on the Property; (5) the
State Defendants engaged in age discrimination; (6) the State
Defendants potentially violated RICO and thus the Court should
order an investigation; and (7) the Defendants conspired to violate
Plaintiffs' constitutional rights.  (First Dismissal Order at 6.)
Following motions to dismiss by the respective Defendants, the
Court issued its First Dismissal Order on February 12, 2013.  The

6

First Dismissal Order disposed of several of Plaintiffs' claims with prejudice, namely: (1) injury by the state court, (2) violations of the Takings Clause by the Town and County, (3) age discrimination against the State Defendants, and (4) any claims against the DEC for monetary relief and against Scully and Rail in their official capacities. (First Dismissal Order at 37.) The remaining claims were dismissed without prejudice and with leave to replead. (First Dismissal Order at 38.) The Court also ordered Plaintiffs to show cause why their claims of equal protection and substantive due process against the State Defendants should proceed. (First Dismissal Order at 38.) Plaintiffs filed a response to the Order to Show Cause on March 11, 2013 (Docket Entry 47) and an Amended Complaint on March 28, 2013. (Docket Entry 51.)

Plaintiffs' Amended Complaint asserted six causes of action: (1) a substantive due process claim against the State Defendants, (2) an equal protection claim against the State Defendants, (3) a regulatory taking against the State Defendants, (4) a claim regarding "illegal searches" against all Defendants, (5) a procedural due process claim against the State Defendants, and (6) conspiracy against all Defendants. In April 2013, the Town and County both moved to dismiss the Amended Complaint, and on February 24, 2014, the Court dismissed with prejudice Plaintiffs' substantive due process, takings, and conspiracy claims against the Town and County and terminated the Town and

County as defendants. (Second Dismissal Order at 26.) The Court also dismissed the balance of Plaintiffs' claims without prejudice but granted Plaintiffs leave to file a Second Amended Complaint containing their remaining claims against the State Defendants. (Second Dismissal Order at 26.) The Second Dismissal Order specified that if Plaintiffs' did not file a Second Amended Complaint, "the Amended Complaint [would] remain the operative document and the equal protection claim [would] be dismissed with prejudice." (Second Dismissal Order at 26.) The Plaintiffs have not filed a Second Amended Complaint. The State Defendants now move to dismiss the remaining claims against them. (Docket Entry 67.)

DISCUSSION

I.   Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal,

8

556 U.S. at 678; accord Harris, 572 F.3d at 72.  Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss.  Iqbal, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.; accord Harris, 572 F.3d at 72.

Furthermore, in deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint."  Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998).  This has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted); Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).

## II. Procedural Due Process

Plaintiffs' allege in their Amended Complaint that the DEC deprived them of their property without due process because they have lost 1.5 acres as a result of flooding and the DEC "deprive[d] [Plaintiffs'] of the opportunity to be heard" and failed to provide Plaintiffs with "adequate notice."  (Am. Compl. ¶ 68.)  Plaintiffs do not explain in the Amended Complaint how they were deprived of the opportunity to heard, or what the

State Defendants failed to give them adequate notice of. But Plaintiffs sought to clarify in their opposition papers that they claim their due process rights were violated when the DEC initially designated their property as wetlands. (Pls.' Opp. Br., Docket Entry 70, at 7.) Defendants argue that Plaintiffs' procedural due Process claim should be dismissed because Plaintiffs were provided an adequate opportunity to be heard during their Article 78 proceeding. (Defs.' Br., Docket Entry 67-1, at 11.) The Court agrees with Defendants.

To provide context, it is necessary to touch upon Plaintiffs' original Complaint and the Court's prior Orders. In the original Complaint, Plaintiff's procedural due process claims were based on the DEC's prosecution of Plaintiffs for violations of the Environmental Conservation law. (See First Dismissal Order at 34.) The DEC charged Plaintiffs with violating the New York State Tidal Wetlands Act and sought an order without a hearing, which the Commissioner of the DEC granted on February 1, 2008. (Cheng. Aff. Ex. A.) Plaintiff's brought an Article 78 action challenging the DEC's determination. (See Compl. ¶ 68). However, the Article 78 action was dismissed on July 22, 2008. (DiCioccio Decl. Ex. C.)

Plaintiff claimed in their original Complaint that their due process right were violated because the DEC prosecuted them

for violations without allowing them the opportunity to have a hearing. (First Dismissal Order at 34.)

"When a person has a property interest that is terminated, 'procedural due process is satisfied if the government provides notice and a limited opportunity to be heard prior to termination, so long as a full adversarial hearing is provided afterwards.'" DeMasi v. Benefico, 567 F. Supp. 2d 449, 454 (S.D.N.Y. 2008) (quoting Locurto v. Safir, 264 F.3d 154, 171 (2d Cir. 2001)). It is well established that an Article 78 proceeding provides an adequate forum to seek the review of a decision rendered by an administrative agency, such as the DEC. See Campo v. N.Y. City Emps. Ret. Sys., 843 F.2d 96, 102-03 (2d Cir. 1988) (holding "that the State of New York, through Article 78 offered . . . a due process hearing at a meaningful time and in a meaningful manner"); Vandor, Inc. v. Militello, 301 F.3d 37, 39 (2d Cir. 2002) (finding that "under New York State law, Article 78 is a form of proceeding available to compel public officials to comply with their responsibilities"). Here, Plaintiffs admitted in their original Complaint that they brought an Article 78 action challenging the DEC's decision to issue violations against Plaintiffs. (See Compl. ¶ 68; DiCioccio Decl. Ex. B.) Although Plaintiffs do not mention the Article 78 proceeding in their Amended Complaint, it nevertheless took place. Therefore, to the extent Plaintiffs' due process claim is based upon the DEC's

prosecution of Plaintiffs' for violations of the Tidal Wetlands Act, that claim is DISMISSED.

Plaintiffs' contention that their due process rights were violated because of the DEC's decision to designate the property "wetlands" was raised for the first time in Plaintiffs' opposition. "[I]t is axiomatic, that [a][c]omplaint cannot be amended by the briefs in opposition to a motion to dismiss." Cal Distrib., Inc. v. Cadbury Schweppes Americas Beverages, Inc., No. 06-CV-0496, 2007 WL 54534, at *6 (S.D.N.Y. Jan. 5, 2007) (internal quotation marks and citation omitted) (alterations in original). Regardless of this defect, Plaintiffs' argument that the DEC's decision to designate Plaintiffs' property as wetlands fails as a matter of law. The proper procedure to challenge the DEC's decision to designate Plaintiffs' property as wetlands was through an Article 78 proceeding. Pub. Serv. Comm'n of State of N.Y. v. Rochester Tel. Corp., 55 N.Y.2d 320, 325, 434 N.E.2d 699, 702, 449 N.Y.S.2d 463 (1982) (internal citation omitted) (holding that party could not collaterally attack an administrative agency's decision which should have been challenged through a timely Article 78 proceeding). However, "the time for such a challenge is now long past." Id. (internal quotations marks and citation omitted). Assuming Plaintiffs had standing when they purchased the property in 2005 to challenge the DEC's decision designating Plaintiff's property as wetlands in the 1970's, the challenge should have made

12

pursuant to Article 78 in state court. Since Plaintiffs'
procedural due process claim fails as a matter of law, it is
DISMISSED WITH PREJUICE.

III. Unlawful Searches

Plaintiffs' claims concerning illegal searches conducted
by the DEC arises under the Fourth Amendment pursuant to
42 U.S.C § 1983. Plaintiff claims in the Amended Complaint that
"[o]n numerous occasions, Defendants NYSDEC, under the direction
and supervision of SCULLY and RAIL, the Town of Islip, and County
of Suffolk, acting under color of law, unlawfully and without the
Segretos'[ ] consent forcibly entered the Segretos'[ ] Home Site,
without probable cause and without [sic] warrant, and conducted a
search of the Home Site."  (Am. Compl. ¶ 61.)

In its First Dismissal Order, this Court held that the
Eleventh Amendment shielded the DEC from suit against Plaintiffs'
allegations under § 1983.  (See First Dismissal Order at 16.)  The
Court therefore dismissed with prejudice all of Plaintiffs' § 1983
claims against the DEC and against Scully and Rail in their
official capacities.  (See First Dismissal Order at 16-17.)  In
the same Order, the Court dismissed Plaintiffs' § 1983 illegal
search allegations against Scully and Rail in their individual
capacities because Plaintiff failed to plead that Scully or Rail
were personally involved in any constitutional violations.  (See
First Dismissal Order at 33-34.)  However, the Court granted

Plaintiffs leave to replead with respect to those claims against Scully and Rail individually. (First Dismissal Order 34, 38.) The State Defendants argue that Plaintiffs remaining illegal search claims against Scully and Rail in their individual capacities should also be dismissed because Plaintiffs' failed to plead that Scully and Rail were personally involved in a constitutional violation. (Def.'s Br. at 15.) The Court agrees that Plaintiffs have failed to adequately allege that Scully and Rail were personally involved an illegal searches of their home.

Claims brought against an official of a federal agency in their official capacity are treated the same as claims brought against the government itself. See Longo v. Suffolk Cnty. Police Dep't Cnty. of Suffolk, 429 F. Supp. 2d 553, 558 n.1 (E.D.N.Y. 2006); Orange v. County of Suffolk, 830 F. Supp. 701, 706–07 (E.D.N.Y. 1993). Such suits are barred under the doctrine of sovereign immunity. See F.D.I.C. v. Meyer, 510 U.S. 471, 484, 114 S. Ct. 996, 1004, 127 L. Ed. 2d 308 (1994)

Nevertheless, a government official can still be held liable for a constitutional violation in her individual or personal capacity. To hold an official liable for a civil rights violation in her individual capacity, the plaintiff must allege that the defendant was "personally involved" in a constitutional violation. Grullon v. City of New Haven, 720 F.3d 133, 137; Longo, 429 F. Supp. 2d at 558. The Second Circuit has held that the kind of

14

"personal involvement" required to hold a supervisory official is limited:

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). To withstand dismissal, a plaintiff must plead sufficient facts demonstrating it is plausible that the plaintiff was personally involved in the constitutional violation(s). See Pierce v. Marano, No. 01-CV-3410, 2002 WL 1858772, at *5 (S.D.N.Y. Aug. 13, 2002). Specifically, the complaint must contain "enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible." In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) (quoting Twombly, 550 U.S. at 547, 127 S. Ct. at 1960).

Here Plaintiff's Amended Complaint does not contain sufficient facts to permit their illegal search claims against Rail and Scully to proceed. Plaintiffs allege that employees of the DEC, "under the direction and supervision of SCULLY and

15

RAIL . . . forcibly entered [Plaintiffs' home]," detained
Plaintiffs "at gunpoint" and conducted a search of the home.  (Am.
Compl. ¶ 61-62.)  Plaintiffs further allege that they are "informed
and believe, and thereon allege, that Vernon Rail personally
participated in and personally advised NYDEC employees that their
trespass [on] and interference with the Segreto's enjoyment of the
Home Site was legal despite his full knowledge to the contrary."
(Am. Compl. ¶ 42.)  Although Plaintiffs sufficiently pleaded that
the search of their home violated the Fourth Amendment, the
description of Scully and Rail's participation in the violation is
conclusory and lacks factual support.  Plaintiffs allege that Rail
and Scully directed and supervised searches of their home, but
Plaintiffs do not provide any supporting facts demonstrating that
their claim is plausible.  (See Am. Compl. ¶ 61.)  Moreover, the
allegation that Rail "personally advised NYDEC employees that
their trespass . . . of the Home Site was legal" was pleaded upon
information and belief, rather than based upon the Segretos
personal knowledge.  (Am. Compl. ¶ 42.)  Pleading facts upon
information and belief is permissible when "the facts are
peculiarly within the possession and control of the defendant . . .
or where the belief is based on factual information that makes the
inference of culpability possible."  Arista Records, LLC v. Doe 3,
604 F.3d 110, 120 (2d Cir. 2010).  Here, however, Plaintiffs'
belief concerning Rail's participation in the Fourth Amendment

16

violation must be necessarily based upon facts rather than conjecture.  Since no facts were provided, Plaintiffs' illegal search claim must be dismissed.  Since Plaintiffs were already given two opportunities to amend their illegal search claim and they neglected to file a Second Amended Complaint, the Court finds that allowing the Plaintiffs a third opportunity to amend would be futile.  Therefore, Plaintiffs' illegal search allegations are DISMISSED WITH PREJUDICE.

## IV. Equal Protection

In the Second Dismissal Order, this Court dismissed Plaintiffs' equal protection claim because Plaintiffs did not adequately allege that other similarly situated persons were treated any differently from Plaintiffs.  (Second Dismissal Order at 14.)  Nevertheless, the Court granted Plaintiffs an opportunity to replead their equal protection claims.  (Second Dismissal Order at 26.)  The Court noted, however, that that if Plaintiffs failed to file a Second Amended Complaint, the Amended Complaint would remain the operative document and Plaintiffs' equal protection claim would be "dismissed with prejudice." (Second Dismissal Order at 26.)  Plaintiffs have not filed a Second Amended Complaint. Therefore, Plaintiffs' equal protection claim is DISMISSED WITH PREJUDICE.

<u>CONCLUSION</u>

For the foregoing reasons, the State Defendants' motion to dismiss the Amended Complaint (Docket Entry 67) is GRANTED and Plaintiffs' claims are DISMISSED WITH PREJUDICE. The Clerk of the Court is directed to enter judgment accordingly and mark this matter CLOSED.


                              SO ORDERED.


                              /s/ JOANNA SEYBERT_____
                              Joanna Seybert, U.S.D.J.

Dated:    February __18__, 2015
          Central Islip, NY